# Connors, Appellant, *v.* Old Forge Discount and Deposit Bank.

*Banks and banking—Checks—Forged endorsement of payee's name—Payment by bank—Notice to bank of forgery—Action by drawer—Nonsuit.*

1. While a bank may be liable for the amount of a check which it had paid on the forged endorsement of the payee, the drawer cannot recover where he fails to prove that notice was given to the bank promptly upon his discovery of the forgery.

2. In an action by the drawer of a check against the drawee bank which had paid the check upon a forged endorsement of the

payee's name, and had charged the amount thereof to the plaintiff, the court properly refused to take off a compulsory nonsuit where it appeared that the plaintiff did not notify the defendant bank of the forgery until forty-three days after he must have learned of it.

Argued Feb. 24, 1914. Appeal, No. 384, Jan. T., 1913, by plaintiff, from order of C. P. Lackawanna Co., Jan. T., 1911, No. 712, refusing to take off nonsuit in case of Henry Connors v. Old Forge Discount and Deposit Bank. Before FELL, C. J., BROWN, MESTREZAT, ELKIN and MOSCHZISKER, JJ. Affirmed.

Assumpsit to recover the amount of a check paid by defendant upon a forged endorsement. Before O'NEILL, J.

The opinion of the Supreme Court states the facts.

The trial judge entered a compulsory nonsuit which the court in banc subsequently refused to take off. Plaintiff appealed.

*Error assigned* was in refusing to take off the nonsuit.

*W. L. Houck,* of *Houck & Benjamin,* with him *Morgan Kaufman,* for appellant.—The plaintiff was not negligent in not notifying the bank more promptly of the forgery: McNeeley v. Bank of No. America, 221 Pa. 588; United Security Life Ins. & Trust Co. v. Bank, 185 Pa. 586; Welsh v. German American Bank, 73 N. Y. 424; Califf v. First National Bank, 37 Pa. Superior Ct. 412; Cunningham v. First National Bank, 219 Pa. 310; Murray v. Real Estate Title Ins. & Trust Co, 39 Pa. Superior Ct. 438; Dallas v. Chaloner, 3 Dall. 500; Christman v. Com., 17 S. & R. 381; Leather Mfg. National Bank v. Morgan, 117 U. S. 96; Robb v. Pennsylvania Co., 3 Pa. Superior 254; Robb v. Pennsylvania Co., 186 Pa. 456; Delaware, L. & W. R. R. Co. v. Jones, 128 Pa. 308.

*R. L. Levy* and *C. H. Welles,* for appellee.—The evidence justified the trial judge in deciding as a matter of

law that the plaintiff was guilty of negligence in failing to notify the bank prior to August 5th, that the endorsement was a forgery: McNeeley v. Bank, 221 Pa. 588; Murray v. Real Estate Title Ins. & Trust Co., 39 Pa. Superior Ct. 438; Hottenstein v. Lerch, 104 Pa. 454; Tabor St. (No. 1), 26 Pa. Superior Ct. 167; Land Title & Trust Co. v. Bank, 196 Pa. 230; Snyder v. Corn Exchange Bank, 221 Pa. 599; States v. First National Bank, 203 Pa. 69.

OPINION BY MR. JUSTICE BROWN, April 20, 1914:

Plaintiff's cause of action, as set forth in his statement of claim, is that, as one of the depositors of the defendant, a banking institution, he drew a check on it which it paid and charged to his account on the forged endorsement of the payee; and he seeks to recover on the averment that, when he discovered that the payee's endorsement was forged, he immediately notified the bank of the forgery. If the material averment, that notice had been given to the bank by the appellant promptly upon his discovery of the forgery, had been supported by proof, the case would have been for the jury. The nonsuit, which the court in banc refused to take off, was evidently directed by the trial judge because that averment was not so supported. While no reason was given for entering the nonsuit, and none for refusing to take it off, it ought, under the material facts in the case, as developed by the plaintiff himself, to have been entered for his delay in notifying the bank of the forgery; and it is to be assumed it was entered for that reason. The vindication of the judgment of the court below is to be found in a brief recital of those facts.

On January 24, 1910, M. Morris Moskovitz, a member of the bar of Lackawanna County, applied to the appellant for a mortgage loan to one of his clients, Alexander Szeghi. In company with Moskovitz the appellant viewed the property which the former told him belonged to Szeghi, and, having been assured by Moskovitz that

the title was good he accepted and left for record a mortgage, apparently signed and acknowledged by Szeghi. The mortgage was delivered to the appellant by Moskovitz, who stated that Szeghi was not able to be present on account of business engagements. Upon receipt of the mortgage the appellant handed Moskovitz his check for $1,450, the amount of the loan, drawn on the appellee to the order of Szeghi. Moskovitz deposited this check, bearing the forged endorsement, "Alexander Szeghi," to his own credit in a bank, which forwarded it to the defendant bank, where it was paid and charged to the appellant's account. Early in May, 1910, he went to Europe, and returned to Scranton on the eighteenth of the following month, when he learned that Moskovitz was a defaulter and had absconded. He then went to look at the property described in the mortgage and learned that Szeghi was not the owner of it. Having learned that a fraud had been practiced upon him, he immediately consulted a lawyer, and, on or about June 20, went to the Union National Bank of Scranton to consult Mr. Wollerton, the cashier, about the situation. His testimony as to this is as follows: "Q. Why did you go to Mr. Wollerton? A. I went there for information, to find something out, if the check was forged or not, if the right party got the money or didn't get the money. I didn't know how to make out. I wasn't in any doubt that the party didn't get the money." Two or three days later—on the 23d of June—he employed counsel, to whom he said, according to his own testimony, "the check was misendorsed, and the bank had no business to cash the check." On July 2, without having given the bank any notice of what he then knew had been a mispayment by it, he went to Oklahoma, returning to Scranton on the twenty-sixth or twenty-seventh of the same month. On August 1 he got from Mr. Wollerton, the cashier of the Union National Bank, the check which he had left with him, and handed it to his attorney, with instructions to notify the bank of the mispayment. This

notice was given August 5, or forty-two days after June 23, when the appellant must have known that the endorsement of the payee was forged. It is idle for him to now contend, as he does, that he did not then know that the forgery had been perpetrated. Out of his own mouth there is an admission that on or about June 20 he started an investigation to ascertain whether the endorsement of the payee was forged, and two days later he informed his own attorney that the check had been misendorsed and that the bank had no business to cash it. It was his duty to then promptly notify the bank of its mispayment, on what he avers in his statement of claim was the forged endorsement of Szeghi's name. In the face of all this it is urged that the jury ought to have been allowed to pass upon the question of the appellant's prompt notice to the bank. To have submitted that question to them would have been such manifest error that the trial judge may be excused for not giving his reason for entering the nonsuit. Among the authorities that compelled him to declare that the plaintiff could not recover reference need be made only to McNeeley v. Bank of North America, 221 Pa. 588.

Judgment affirmed.